**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **VERONICA TAYLOR,** *et al.* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 19-4533** |
| | : | |
| **CHRISTIAN TUMOLO,** *et al.* | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                 **March 31, 2020**

Philadelphia citizens suing in October 2019 claiming United States Marshals improperly invaded a home in October 2013 and imposed excessive force upon them must explain why they did not sue within two years of the conduct.  They knew of the invasion and alleged excessive force the day it occurred. No one concealed the injury or nature of the offense.  On October 29, 2015, the last day of the two-year statute of limitations, the citizens sued the Director and Acting Director of the United States Marshals Service and twenty John and Jane Doe Marshals who allegedly invaded the home and imposed excessive force under *Bivens*.[1] But then, before the Marshals answered and before issuing discovery in 2016 permitted by our pre-Answer Order, they decided to dismiss their case against the Marshals and agreed to sue only the United States under the Federal Tort Claims Act after exhausting the Act's administrative remedies.  The citizens exhausted their administrative remedies but failed to sue the United States within the six months required by Congress.  Fully aware they missed this six-month deadline, the citizens nevertheless sued the United States in 2018 and, seeking to toll the statute of limitations on their claims, argued the United States misled them about when they needed to file after the administrative remedies process.  On our referral following the parties' consent, Judge Heffley extensively studied the tolling arguments and found the two-year statute of limitations barred

their 2018 Federal Tort Claims Act claims against the United States because the Plaintiffs inexplicably failed to adduce evidence allowing a court to toll the statute of limitations.

The Philadelphia citizens then turned around in October 2019 and again sued the individual Marshals under *Bivens*. They brought this suit almost six years after the October 29, 2013 incident. They claim they did not know the identities of the individual Marshals until the mid-2018 mandatory disclosures in the 2018 Federal Tort Claims Act case. After the Marshals moved to dismiss this case, the citizens amended to plead facts supporting their request for us to toll the two-year statute of limitations arguing the Marshals somehow fraudulently duped them in Spring 2016 into ignoring our Orders and the Federal Rules of Civil Procedure which allowed them to issue specific interrogatories, move for more time to serve John/Jane Does, or to compel more fulsome mandatory disclosures.

We cannot allow the compelling facts of an October 29, 2013 mistaken invasion arguably calling for scrutiny to create bad law through a new judicial exception to the rules of civil procedure absent plausible pleading of fraudulent concealment which could possibly equitably toll Pennsylvania's two-year statute of limitations. The citizens failed to act with diligence, and after scrutinizing the allegations in their now third Complaint (and second *Bivens* action against the Marshals) with all deference to the citizens, we must grant the Marshals' motion to dismiss as this resurrected claim against the Marshals is untimely by several years.

We understand how the citizens may view this result as unfair given the alleged conduct. But the rules must have some meaning even when the result could be considered unfair. Their counsel presumably knew the rules, and the available relief afforded by them. In fact, he lost a similar argument based on failing to timely amend to name unknown state actors before our Court of Appeals in 2003 for other injured citizens. These citizens before us now fail to plead or

argue a possible basis to find opposing counsel fraudulently concealed or misled their lawyer as to his obligations. Fraudulent concealment does not apply when plaintiffs know the injury right away but do not know the specific identities of the John/Jane Does. Our February 2, 2016 Order and the Federal Rules of Civil Procedure offered the citizens the ability to learn the Marshals' identity in their first lawsuit. The citizens did not pursue their remedies to discover who specifically invaded the home after knowing the conduct and their injury immediately. There is no basis for equitable tolling based on fraudulent concealment.

## I.     Background

Philadelphia citizens Veronica Taylor, Kareem Curry, Vernon Curry, Nelson Rodriguez, Julius Butler, and Robert Ragsdale seek a remedy for an October 29, 2013 mistaken invasion by United States Marshals of Ms. Taylor's Philadelphia home. On October 29, 2013, approximately twenty armed United States Marshals stormed Ms. Taylor's home, detaining the citizens at gunpoint, searching the home, and allegedly using excessive force causing injury. Ms. Taylor and her family allege Mr. Kareem Curry and Mr. Butler opened the front door of Ms. Taylor's home when they saw twenty United States Marshals running up the street yelling "get on the f***ing ground."[2] Frightened by the sight of twenty federal Marshals armed with assault rifles and shotguns running toward them, Kareem Curry slammed the door to the house.[3] Moments later, the Marshals kicked down the door and entered Ms. Taylor's home.[4] Before entering, Marshals encountered seventy-one-year-old Mr. Ragsdale outside the home, shoved him to the ground causing him to hit his head, and pointed a gun at him until they entered Ms. Taylor's home.[5]

Mr. Rodriguez asked to see a warrant. A Marshal then hit him on the shoulder with the butt of a gun, slammed him to the ground, and handcuffed him.[6] When Ms. Taylor told the

Marshals her two-year-old grandchildren were in the home, they told her to "shut up," and pointed a gun at her.[7] The Marshals then handcuffed Mr. Vernon Curry and asked him about a person he did not know named "Nafis."[8] The Marshals held these citizens inside Ms. Taylor's home at gunpoint while they conducted a warrantless search of the house.[9] The Marshals fingerprinted and photographed the men inside the home.[10] After approximately thirty minutes inside Ms. Taylor's home, the Marshals realized they entered the wrong house and left.[11]

### *The citizens voluntarily dismiss a 2015 Bivens action against United States Marshals.*

On October 29, 2015, exactly two years after the October 29, 2013 raid of her home (the very last day before the statute of limitations expired), Ms. Taylor and others in her house sued the Director of the United States Marshals Service Stacia A. Hylton,[12] Acting Director of the United States Marshals Service David L. Harlow, and twenty John/Jane Doe Marshals.[13] Their October 2015 complaint asserted *Bivens* claims against all Defendant Marshals for illegal entry and seizure and excessive force in violation of the Fourth Amendment, bystander liability, and conspiracy. They brought a *Monell* supervisory liability claim against Director Hylton and Acting Director Harlow.[14] They sought damages as a result of the Marshals' conduct.

On December 29, 2015, we granted the Marshal Defendants'[15] motion to extend the time to respond to this complaint because it appeared the citizens did not serve Director Hylton or the United States Attorney General with a copy of the complaint as required by Federal Rule of Civil Procedure 4(i).[16] We allowed the Marshal Defendants to respond to the complaint sixty days following the later of service upon Director Hylton or the United States Attorney General.[17]

Ms. Taylor and her fellow citizens did nothing to correct their service issues prompting us, on January 28, 2016, to notify them if service was not made on Director Hylton or the United States Attorney General by February 26, 2016, the last day of the (then) 120-day period to serve

the Marshals under Federal Rule of Civil Procedure 4(m), we would dismiss the action without prejudice for lack of prosecution.[18]

On February 2, 2016, we amended our December 29, 2015 Order requiring the Marshals to respond to the *Bivens* action by March 18, 2016 and scheduling an initial pretrial conference for eight weeks later on March 30, 2016.[19]  On February 2, 2016, we also granted the parties the right to immediately issue written discovery presuming compliance with the thirty day response time would allow Plaintiffs to discover the names of the John/Jane Doe Marshals.  Plaintiffs inexplicably never issued this discovery.  Director Hylton and Acting Director Harlow served their initial disclosures under Rule 26(a) on February 26, 2016, over a month before our initial conference.[20]  Their disclosures did not identify the specific United States Marshals involved in the October 29, 2013 incident.  In addition to not seeking permitted writing discovery to find out the names of the John/Jane Doe Marshals, Ms. Taylor and her fellow citizens did not move to compel more fulsome disclosures.

### *Plaintiffs change their litigation strategy.*

Their experienced lawyer instead changed their litigation strategy.  On March 14, 2016, four days before the deadline for the Marshals to respond to the complaint and over two weeks before our initial pretrial conference, the parties stipulated for an order of substitution and dismissal (the "2016 Stipulation").[21]  In the 2016 Stipulation, the parties agreed, *inter alia*:

- Plaintiffs filed their October 29, 2015 complaint against Director Hylton and Acting Director Harlow and "fictional John Doe Defendants Nos. 1-20, who are alleged to be unidentified United States Marshals, alleging various constitutional violations."

- The complaint's allegations "may be construed as alleging common law tort violations against federal officials or employees acting within the scope of their employment."

- Plaintiffs "desire to recharacterize their complaint as an action alleging a single count under the Federal Tort Claims Act, 28 U.S.C. § 2675 *et seq.*" ("FTCA").

- The United States is the only permissible defendant under the FTCA and the United States "should be substituted as the lone defendant and that the Individual Federal Defendants and the John Doe Defendants should be dismissed."

- After the substitution of the United States as "the lone defendant, the action shall be dismissed without prejudice for failure" to exhaust administrative remedies under the FTCA, 28 U.S.C. § 2675(a). [22]

- Plaintiffs "anticipate promptly filing an administrative claim with the United States Marshals Service" and, in the event the claim is denied by the agency in writing or by the expiration of six months as prescribed by statute, "Plaintiffs anticipate promptly filing a complaint in this Court against the United States under the Federal Tort Claims Act."[23]

We entered an order substituting the United States as a defendant under the FTCA; dismissed all claims against Director Hylton, Acting Director Harlow, and the John/Jane Doe Marshals; dismissed the action against the United States without prejudice for failure to exhaust administrative remedies; and closed the case.[24]

Notably, the parties entered the 2016 Stipulation *before* Director Hylton and Acting Director Harlow responded to the complaint and *before* our scheduled initial pretrial conference where we would have discussed discovery issues, including identifying the twenty John/Jane Doe Marshals, and entered an appropriate scheduling order. The case never went that far, presumably because Plaintiffs "desire[d] to recharacterize their complaint" as a single claim against the United States under the FTCA.

### *Plaintiffs pursue the FTCA administrative remedy.*

As contemplated by the 2016 Stipulation, Plaintiffs anticipated promptly filing an administrative claim with the United States Marshals Service and, upon denial of the claim or expiration of the six-month period (deemed denied under the statute if the agency failed to make final disposition), file the FTCA complaint against the United States in this Court.

Ms. Taylor, Mr. Kareem Curry, Mr. Vernon Curry, Mr. Rodriguez, and Mr. Ragsdale filed their administrative claim on May 4, 2016 and Mr. Butler filed his administrative claim on June 7, 2016.[25] The agency did not act on Plaintiffs' administrative claims within six months of May 4, 2016 or June 7, 2016. Although the agency's failure to make a final disposition on Plaintiffs' claims within six months is deemed by the Act to be a final denial, Plaintiffs opted not file a complaint six months later in November or December 2016.[26] Plaintiffs instead opted to wait. Another five to six months passed until the agency issued a final decision on Plaintiffs' administrative claims on May 26, 2017.[27]

### Plaintiffs file the FTCA complaint thirteen months after denial of administrative claim.

On January 31, 2018, Plaintiffs filed an amended complaint in the first *Bivens* action asserting a single-count negligence claim under the FTCA against the United States.[28] They pleaded: "Plaintiffs hereby file this action against the United States of America pursuant to the Federal Tort Claims Act."[29] On February 1, 2018, we struck the amended complaint as filed in a dismissed matter without prejudice to file a new action if warranted under Federal Rule of Civil Procedure 11.[30]

Nearly three weeks later, on February 20, 2018, Plaintiffs filed a complaint, identical to the proposed amended complaint in the first *Bivens* action pleading one count of negligence against the United States under the FTCA.[31] The United States moved to dismiss the complaint, arguing Plaintiffs failed to timely file their FTCA complaint within six-months of the agency's denial of their administrative claims.[32] The FTCA provides "a tort claim against the United States 'shall be forever barred' unless it is presented to the 'appropriate Federal agency within two years after such claim accrues' and then brought to federal court 'within six months' after the agency acts on the claim."[33]

Although the six-month clock began running on Plaintiffs' claims on May 26, 2017 making a complaint filed in this Court due on Monday, November 27, 2017, Plaintiffs did not file their FTCA claim until February 1, 2018.[34]  The United States moved to dismiss Plaintiffs' complaint in this FTCA action as untimely.[35]

The Plaintiffs, apparently believing the 2016 Stipulation relieved them of the six-month limitations period in the FTCA, responded to the motion to dismiss by filing an amended complaint.[36]  In their amended complaint, Plaintiffs alleged the parties understood the 2016 Stipulation to mean Plaintiffs would "promptly file" an administrative claim with the agency and, after denial or the expiration of six months, "anticipate promptly filing a complaint in this Court against the United States under the Federal Tort Claims Act."[37]  Plaintiffs alleged the parties "did not agree or understand that in refiling the Complaint under the Tort Claims Act the Plaintiffs had to file the 'recharacterized' Complaint within the six-month period under the Tort Claims Act, but instead understood that the Plaintiffs had to file the 'recharacterized' Complaint 'promptly' without defining what 'promptly' meant."[38]  Plaintiffs alleged they "promptly filed" this action on February 1, 2018, concededly outside the six-month limitations period.

The United States moved to dismiss the amended complaint, again arguing it is barred by the six-month limitations period.[39]  The United States argued it did not stipulate to an open-ended period for Plaintiffs to file a complaint in court following denial of their administrative claims, did not waive the statutory requirements of the FTCA, and there is no reasonable construction of "prompt" in the 2016 Stipulation to mean a period longer than the statutorily provided six-month maximum.

Plaintiffs responded by arguing equitable estoppel bars the United States from asserting the limitations periods in the FTCA because of the United States' representations, conduct, or

promises.[40]  This he-said, she-said dispute about the United States' alleged conduct required fact finding.  Finding resolution of equitable tolling inappropriate at the motion to dismiss stage, we denied the United States' motion to dismiss and directed it to answer the amended complaint by June 5, 2018.[41]  We proceeded into discovery including on whether the United States' representations surrounding the meaning of "prompt" in the 2016 Stipulation estopped it from now claiming the FTCA suit is untimely.

The United States made its initial Rule 26(a) disclosures on May 30, 2018 identifying the Marshals involved in the October 29, 2013 incident and filed its answer on June 5, 2018.[42]  We scheduled an initial pretrial conference for June 13, 2018, but the day before the conference the parties consented to the jurisdiction of Magistrate Judge Marilyn Heffley.[43]  On June 18, 2018, after holding a status conference with counsel, Judge Heffley granted the parties three months of discovery, to September 14, 2018, limited to the issue of equitable tolling and set the schedule for case dispositive motions.[44]

On September 14, 2018, the last day of the discovery period, Plaintiffs moved to compel the United States to provide more specific responses to their discovery requests and to extend the time to take discovery on the issue of equitable tolling for an additional sixty days.[45]  The United States opposed the motion, and moved for summary judgment.[46]

Judge Heffley considered Plaintiffs' motion to compel discovery and for an enlargement of time to conduct discovery and the United States' motion for summary judgment and ordered Plaintiffs to either respond to summary judgment on the merits or, if they believe additional discovery is required to properly respond to the motion, file a motion under Federal Rule of Civil Procedure 56(d) seeking additional time for discovery.[47]

Plaintiffs elected to file a Rule 56(d) motion seeking additional time for discovery.[48] Plaintiffs conceded they served discovery requests in early June 2018 to which the United States timely responded. But, the Plaintiffs argued, they believed some responses were insufficient, contacted the United States Attorney's Office in Philadelphia (counsel for the United States), and requested more specific responses. Plaintiffs also sought the deposition of a United States attorney who negotiated the 2016 Stipulation regarding his understanding of it, but the United States refused to provide additional responses to discovery requests or appear for deposition. For whatever reason, like their strategy in not seeking more fulsome disclosures in the first *Bivens* case, Plaintiffs did nothing to timely compel discovery, and instead waited until the close of discovery to compel the United States to produce discovery relating to the 2016 Stipulation.

Plaintiffs supported their Rule 56(d) Motion with their counsel Attorney Alan Denenberg's affidavit.[49] Attorney Denenberg swore the 2016 Stipulation drafted by the United States "was intentionally misleading because it did not provide that the Plaintiffs had to file their FTCA claims in accordance with the statutory requirements, but instead provided that the FTCA claims only had to be 'promptly' filed."[50] Attorney Denenberg explained Plaintiffs requested the United States produce stipulations for dismissal filed in other cases where parties recasted *Bivens* claims as Federal Tort Claims to compare the language used in other stipulations to support their reading of the 2016 Stipulation.

Attorney Denenberg also swore Plaintiffs requested training and policy material related to the conversion of *Bivens* claims as well as depositions of the Assistant United States Attorney who negotiated the 2016 Stipulation and of an individual responsible for training Assistant United States Attorneys in handling *Bivens* claims and FTCA claims to support their theory the Assistant United States Attorney "requested the *Bivens* claim be converted into a FTCA claim"

because "[t]he reasons proffered were the failure to identify the John Doe Defendants and per se conflict of interest between the individual Defendants/Officers and the United States."[51]

Attorney Denenberg swore he required this discovery to support Plaintiffs' theory the Justice Department trains its attorneys "to convert all *Bivens* claims into FTCA claims in part because it creates potential pit falls for a plaintiff who has timely filed his or her *Bivens* claim, as Plaintiffs did in this case" and "it makes it more likely not only that the Stipulation was drafted in a manner to mislead, but also all other conduct on the part of Defendant was done with the intent to mislead and therefore the policy and training is relevant to the issue of Equitable Tolling …"[52]

After studying the parties' motions, Judge Heffley entered summary judgment in favor of the United States on December 5, 2018. Judge Heffley concluded Plaintiffs' Rule 56(d) Motion failed to demonstrate how additional discovery may preclude summary judgment.[53] Judge Heffley reasoned the discovery Plaintiffs sought—policies and training practices and depositions—could not possibly establish the Assistant United States Attorney actively mislead them in this case. Judge Heffley found "[t]he fact that Plaintiffs feel the need to obtain discovery to learn how it was that defense counsel mislead them, therefore, corroborates that they cannot show that they relied on any of the as-yet undiscovered information."[54]

Interpreting the 2016 Stipulation, Judge Heffley concluded there is no objectively reasonable basis to find the filing of an FTCA complaint did not include complying with its statutory filing deadline, and it is not objectively reasonable to find the United States agreed to waive the statutory filing deadline. Judge Heffley concluded Plaintiffs' failure to diligently pursue discovery is another ground on which to reject their equitable tolling argument. Judge Heffley noted Plaintiffs did not attempt to explain why they waited months, until the day of the

discovery deadline, to object to the United States' discovery responses or inquire about depositions and did not explain how their conduct could be considered diligent.

Plaintiffs moved Judge Heffley to reconsider.[55] Judge Heffley denied the motion on January 3, 2019.[56] Plaintiffs did not appeal from Judge Heffley's Orders.

### *Plaintiffs file this second Bivens action in October 2019.*

In October 2019, over ten months after Judge Heffley's summary judgment order, Plaintiffs filed this second *Bivens* action against Supervisor Chad Grant, twelve Special Deputy United States Marshals, and three Special Agents[57] for illegal entry and seizure, excessive force, bystander liability, and conspiracy in violation of the Fourth Amendment, and a supervisory liability claim against Supervisor Chad Grant.[58] Plaintiffs did not name Director Hylton and Acting Director Harlow as defendants in this second *Bivens* action. The same attorneys from the United States Attorney's Office involved since the first *Bivens* action represent the named defendants.

The Defendants moved to dismiss the complaint arguing, among other things, the claims in this second *Bivens* action are barred by the Pennsylvania statute of limitations. Knowing the statute of limitations argument, Plaintiffs amended their complaint.[59] Plaintiffs now plead two facts which they assert, in combination, permit equitable tolling under a fraudulent concealment theory: In the first *Bivens* action, Director Hylton and Acting Director Harlow concealed the identity of the Marshals involved in the October 29, 2013 incident; and, the United States Attorney's request for an extension of time to respond to the first *Bivens* complaint in December 2015 precluded Plaintiffs' ability to amend to add the identities of the Marshals.

As to their first fact, Plaintiffs allege Director Hylton and Acting Director Harlow concealed the identity of the John/Jane Doe Marshals by withholding their names in the Rule

26(a) initial disclosures made in the first *Bivens* action and representing only Director Hylton and Acting Director Harlow had knowledge of the incident.[60]  Plaintiffs allege on December 13, 2013, their counsel sent the United States Marshals Office in Philadelphia a letter advising it of the October 29, 2013 incident, notifying the Office Plaintiffs sustained injuries as a result of the incident, asking the Marshals to establish a claim file, and closing the letter with "I understand that you will advise me of any additional information requirements that you need to fully set up the claim file and investigate this claim."[61]  Plaintiffs allege this letter put the Marshals Service on notice of their claims.  This December 13, 2013 letter confirms Plaintiffs' counsel knew he needed to learn the identity of the individual Marshals.  But then nothing happened for almost two years.

Plaintiffs' second fact is based on our December 29, 2015 Order granting the Marshals' motion for an extension of time to respond.  Plaintiffs filed the first *Bivens* action on October 29, 2015.[62]  On December 28, 2015, the Marshals requested a sixty-day extension to respond to the complaint because of lack of service on Director Hylton and the United States Attorney General. Plaintiffs did not oppose the motion for extension of time, but now assert they did not have an opportunity to respond to the Marshals' request to answer because we granted the extension the next day given the answer due date.[63]  Plaintiffs do not allege how they would have possibly opposed the Marshals' extension motion if they had the time to do so or explain their lack of service of the first *Bivens* action on all Defendants.  Plaintiffs then allege this extension resulted in the "Defendants' Answer was not due until approximately 120 days after the Complaint was filed, which means that even if the defendants had identified the John/Jane Doe Defendants involved the incident in their Answer, the Plaintiffs would not have been able to file a motion to

amend the complaint to replace the John/Jane Doe Defendants with named individuals because it would have been past the time for service" under Federal Rule of Civil Procedure 4(m).[64]

Plaintiffs allege despite their conclusory due diligence to discover the names of the John/Jane Doe Marshals in the first *Bivens* action, Defendants intentionally concealed their identities in the Rule 26(a) disclosures and misrepresented only Defendants Hylton and Harlow had knowledge of the incident.[65] Plaintiffs allege because "Defendants" (not the parties sued today) concealed the identity of those involved in the October 29, 2013 incident, and the time for amending the complaint passed, they "were required or forced to agree to the [2016 Stipulation dismissing the complaint] and to refile as a Federal Tort Claims Action against the United States."[66] Rather than seeking relief from us, the Plaintiffs now allege the Federal Rules forced them to sign the 2016 Stipulation.

Plaintiffs allege because they did not discover the identities of the John/Jane Doe Marshals until the United States served its Rule 26(a) disclosures in the FTCA action on May 30, 2018, the fraudulent concealment theory of tolling applies and their second *Bivens* action is not barred by the statute of limitations.[67]

## II.     Analysis[68]

The Marshals move to dismiss the amended complaint in this second *Bivens* action for six reasons: (1) the FTCA's statutory judgment bar; (2) the statute of limitations; (3) qualified immunity protects the Marshals from the *Bivens* conspiracy claim; (4) qualified immunity protects the Marshals from the *Bivens* bystander liability claim; (5) qualified immunity protects Defendant Supervisor Chad Grant from a supervisory liability claim; and, (6) failure of service.[69] Plaintiffs oppose the motion deciding to limit their tolling argument to a fraudulent concealment theory. In their reply, the Defendants argue Plaintiff's suit against different defendants in the

first and second *Bivens* actions suggests we should reject the Plaintiffs' fraudulent concealment argument, even though the same United States Attorneys represented their interests in both cases. After two attempts in this second *Bivens* action after years of delays, we now address whether we can toll the two-year statute of limitations and allow Plaintiffs to proceed with an October 2019 claim against the same persons they sued on the last day of the limitations period in October 2015, withdrew those claims in March 2016, and now bring the same claims against the same persons again in 2019. Because we find Plaintiffs' second *Bivens* action untimely and not saved by equitable tolling under a fraudulent concealment theory, we need not address the remaining arguments in the Marshals' motion, nor do we need to address recent developments in the FTCA judgment bar.[70]

We may consider the statute of limitations defense in a motion to dismiss under Rule 12(b)(6) "only if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'"[71] On the face of this amended complaint, as well as the previous actions before us, Plaintiffs' second *Bivens* action is barred by the statute of limitations. As the facts are set and Plaintiffs never alleged the United States Attorney's actions concealed the fact of injury and could not now do so given their admissions, further leave to amend is futile. We cannot affix blame for the delayed claims on the United States given our February 2, 2016 Order permitting extensive time for pre-Answer discovery in the first *Bivens* action and the liberal standards intended to promote resolving cases on their merits under Federal Rules 4(m) and 15(c). The Plaintiffs' lack of diligence caused their untimely filing. We grant the Marshals' motion to dismiss.

## A. Pennsylvania's two-year statute of limitations applies to *Bivens* claims.

"A *Bivens* claim is 'characterized as a personal-injury claim and thus is governed by the applicable state's statute of limitations for personal-injury claims.'"[72] Pennsylvania has a two-year statute of limitations for personal injury actions.[73] Although Pennsylvania law provides the applicable statute of limitations, federal law applies to determine when a *Bivens* claim accrues.[74] Under federal law, "[i]t is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief."[75] A cause of action accrues "when the plaintiff knew or should have known of the injury upon which its action is based."[76]

There is no dispute Plaintiffs knew of their injury on the day the Marshals raided Ms. Taylor's home. Plaintiffs admit filing their second *Bivens* action beyond the two-year statute of limitations. Anticipating the Marshals' statute of limitations argument, Plaintiffs allege in their amended complaint the "Defendants" "actively concealed" and "intentionally concealed" the identities of the John/Jane Doe Marshals in the first *Bivens* action, and under the doctrine of fraudulent concealment, their second *Bivens* action is not barred by the statute of limitations.[77]

## B. Plaintiffs do not plead plausible allegations allowing us to toll the statute of limitations under the doctrine of fraudulent concealment.

Plaintiffs urge us to apply Pennsylvania law as to tolling doctrines applying to *Bivens* claims.[78] As a general rule under Pennsylvania law, "a party asserting a cause of action is under a duty to use all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery is based and to institute suit within the prescribed statutory period."[79] Limitations periods begin to run "as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations" and … "[o]nce the prescribed statutory period has expired, the party is

barred from bringing suit unless it is established that an exception to the general rule applies which acts to toll the running of the statute."[80] "Pennsylvania favors *strict application* of the statutes of limitation."[81]

Plaintiffs' sole argument is based on the doctrine of fraudulent concealment.[82] Under Pennsylvania law, an opposing party's fraudulent concealment of the injury may toll a statute of limitations.[83] "The doctrine is based on a theory of estoppel, and provides that the defendant may not invoke the statute of limitations, if through fraud or concealment, he causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts."[84] The doctrine of fraudulent concealment only tolls the statute of limitations until a plaintiff should have known of his injury or its cause.[85] Plaintiffs do not offer, and we could not find, authority extending this tolling to knowing the names of the John/Jnne Does who caused the known injury.

The fraud required to show fraudulent concealment is "fraud in the broadest sense, which includes an unintentional deception."[86] Plaintiffs have the burden of providing fraudulent concealment by clear, precise, and convincing evidence.[87] "While it is for the court to determine whether an estoppel results from established facts, it is for the jury to say whether the remarks that are alleged to constitute the fraud or concealment were made."[88] An element of fraudulent concealment is reasonable diligence; it is "the responsibility of a party who seeks to assert a cause of action against another to be reasonably diligent in informing himself of the facts upon which his recovery may be based."[89]

Plaintiffs argue they sufficiently pleaded Pennsylvania's doctrine of fraudulent concealment. Plaintiffs' fraudulent concealment theory is the United States Attorney intentionally omitted the identities of the John/Jane Doe Marshals from the Rule 26(a) disclosures of Director Hylton and Acting Director Harlow in the first *Bivens* action, which

somehow precluded them from pursuing their claims. This alleged concealment "coupled with" the Defendants' "intentional ploy" to move for an extension of time to respond to Plaintiffs' complaint in the first *Bivens* action (and presumably to have us grant the request) works as a fraudulent concealment of the identity of John/Jane Doe Marshals. Plaintiffs affix the blame on the wrong parties.

Plaintiffs do not plead the United States concealed facts relating to their injury. Under Pennsylvania law, it is "the responsibility of a party who seeks to assert a cause of action against another to be reasonably diligent in informing himself of the facts upon which his recovery may be based."[90] As instructed by the Pennsylvania Supreme Court in *Fine v. Checchio,* "a statute of limitations that is tolled by virtue of fraudulent concealment begins to run when the injured party *knows or reasonably should know of his injury and its cause*."[91]

In *Fine*, the plaintiff sued his dentist for injury after the expiration of the statute of limitations. The dentist argued the statute of limitations barred the claim. Plaintiff argued the doctrine of fraudulent concealment applied to toll the statute of limitations because the dentist repeatedly told him symptoms of numbness were normal side effects of oral surgery rather than nerve damage. On the issue of fraudulent concealment, the Pennsylvania Supreme Court held summary judgment could not be entered in favor of the dentist because the parties disputed the comments made by the dentist and a question of fact remained as to whether plaintiff should have known of his injury within the statutory period in the face of the dentist's alleged representations.[92]

Unlike the plaintiff in *Fine*, the Plaintiffs knew of their injury on October 29, 2013. There are no allegations the United States concealed the injury. Plaintiffs timely sued the Marshals, albeit on the last day permitted by Pennsylvania law. They knew of the injury and

timely sued. But they allege Director Hylton's and Acting Director Harlow's Rule 26(a) disclosures did not identify the name of the John/Jane Doe Marshals constitutes fraudulent concealment.

The context in which Plaintiffs make their fraudulent concealment theory is critical to understanding the fallacy in extending this theory to discovery of John/Jane Doe defendants. Plaintiffs filed the first *Bivens* action on October 29, 2015, the last day of the two-year statute of limitations. Plaintiffs do not today allege doing anything to determine the identity of the John/Jane Doe Marshals in the two years between the time of the incident and the filing of the complaint in the first *Bivens* action. Plaintiffs attach to their amended complaint before us today a December 13, 2013 letter written by their counsel to the United States Marshals in Philadelphia providing notice of the incident, injuries sustained by Plaintiffs, and asking the Marshal Service to "establish a claim file and correspond with me directly in writing. I understand that you will advise me of any additional information requirements that you need to fully set up the claim file and investigate this claim."[93] Although Plaintiffs point to this letter as exhibiting effort to discover the identities of the John/Jane Doe Marshals, the letter does not demand to know the identities of the John/Jane Doe Marshals and there is no allegation Plaintiffs ever followed up on the letter or in any way attempted to determine the identities of the John/Jane Doe Marshals.

The day after Plaintiffs filed the first *Bivens* action in October 2015, they served the United States Attorney in Philadelphia which accepted service on behalf of the United States Attorney only.[94] There is no allegation or record Plaintiffs acted to determine the identity of the John/Jane Doe Marshals after October 29, 2015.

Not only did Plaintiffs fail to take steps to determine the identity of the John/Jane Doe Marshals after filing their October 2015 complaint, they also did not serve Director Hylton or the

United States Attorney General as required by Federal Rule of Civil Procedure 4(i). This failure prompted the United States Attorney, on December 28, 2015, to move for an extension of time to respond to the October 2015 complaint.[95]

In its December 28, 2015 motion for an extension, the United States Attorney clearly disclosed its limited scope of representation of the named defendants; it noted its limited authority to represent the individuals only for the purpose of filing the motion, and made clear "[r]epresentation requests have not been made for any of the John and/or Jane Doe U.S. Marshal defendants as [the Department of Justice] cannot authorize representation for unnamed defendants."[96]

The United States Attorney accepted service of the first *Bivens* complaint on October 30, 2015, and Plaintiffs served the summons and complaint on Acting Director Harlow on December 1, 2015. The United States Attorney noted "it does not appear that service has been perfected upon defendant Hylton … [or] the United States Attorney General." Although service did not appear to be made on all defendants, the United States Attorney nevertheless moved for an extension of time to respond "out of an abundance of caution," reasoning the earliest the defendants must respond to official capacity claims is December 29, 2015.[97] Given the immediate response date, we granted the extension for sixty days to respond to the October 2015 complaint after the later of service on Director Hylton or the Attorney General.[98] If Plaintiffs had an issue with our granting the extension – and they suggest we granted the motion for extension too quickly for them to respond – they did nothing to bring it to our attention and did not file a motion to reconsider or otherwise object to our extension Order. Recall, as of the date of our December 29, 2015 Order, Plaintiffs still had not effected service on Director Hylton or the Attorney General.

For reasons they never address, Plaintiffs still did not serve Director Hylton or the Attorney General after our December 29, 2015 Order. On January 28, 2016, ninety days after first filing their complaint and with no service on Director Hylton or the Attorney General, we notified Plaintiffs they must serve the complaint by February 26, 2016 (120 days after filing the complaint) or risk dismissal for lack of prosecution.[99]

On January 29, 2016, we amended our December 29, 2015 Order and directed defendants respond to the October 2015 complaint by March 18, 2016.[100] On February 2, 2016, we scheduled a pretrial conference for March 30, 2018 and ordered the parties make their Rule 26(a) disclosures within seven days with discovery beginning immediately.[101] We also granted Plaintiffs the right to immediately issue interrogatories to learn the identities of the John/Jane Doe Marshals. There is no allegation here or in the record of the first *Bivens* action Plaintiffs ever issued discovery to determine the identity of the John/Jane Doe Marshals. Plaintiffs never explain why they did not.

On February 26, 2016, Director Hylton and Acting Director Harlow made their Rule 26 disclosures; neither identified the John/Jane Doe Marshals. As it happened, February 26, 2016 fell on the 120th day from filing the complaint in the first *Bivens* action. Under then Federal Rule of Civil Procedure 4(m), service of the complaint must be made within 120 days after filing the complaint. If a defendant is not served within 120 days, the court "on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."[102] Plaintiffs never moved for an extension.

As of February 26, 2016, in the first *Bivens* action, we know:

- Plaintiffs failed to serve the John/Jane Doe Defendants within the time period of then Rule 4(m);

- Plaintiffs made no effort to take discovery on the identities of the John/Joe Defendants at any time in the first *Bivens* action even after our February 2, 2016 Order notifying the parties "[t]he discovery period, regardless of a pending motion, begins with this Order and the parties shall exchange written discovery requests **immediately**";[103]

- Director Hylton and Acting Director Harlow made their Rule 26(a) disclosures;

- Despite receiving Director Hylton's and Acting Director Harlow's Rule 26(a) disclosures – which did not identify the John/Jane Doe Marshals and which Plaintiffs now argue is fraudulent - Plaintiffs still did nothing to discover the names; they did not issue discovery, move to compel discovery, or file a motion for an enlargement of time within which to serve the John/Jane Doe Marshals.

Such was the state of litigation when, four days before the deadline for Director Hylton and Acting Director Harlow to answer, the parties entered the 2016 Stipulation. In it, Plaintiffs agreed to dismiss all claims against the John/Jane Doe Marshals, Director Hylton, and Acting Director Harlow in favor of an FTCA action against the United States.

### 1. Plaintiffs failed to diligently seek the Marshals' identities.

Now, in this second *Bivens* action, Plaintiffs argue Director Hylton and Acting Director Harlow's Rule 26(a) disclosures fraudulently concealed the identities of the John/Jane Doe Marshals in the first *Bivens* action **and** the United States Attorney's requested sixty-day extension of time to answer the complaint somehow is an "intentional ploy" to preclude Plaintiffs from pursuing *Bivens* claims requiring the application of an equitable tolling doctrine. They never explain why they failed to issue discovery permitted by our February 2, 2016 Order; moved to compel more fulsome Rule 26 disclosures to learn the identity of the John/Jane Doe Marshals; or, moved for an extension of time to serve based on their present view they did not know the John/Jane Doe identities.

The undisputed admitted facts and the public record dockets render the Plaintiffs' fraudulent concealment theory implausible.  There is no authority, and Plaintiffs cite none, less than fulsome initial Rule 26(a) disclosures constitute a basis to apply Pennsylvania's fraudulent concealment doctrine.  Although the fraud required for the application of the doctrine is "fraud in the broadest sense" including "unintentional deception," the fraud or concealment must "cause[ ] the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts."[104]  There is no allegation, nor does the record in the first *Bivens* action support, the Rule 26(a) disclosures caused Plaintiffs to relax their vigilance or deviate from their right of inquiry into the facts.  Plaintiffs could not have "relaxed" or "deviated from" their total inaction to discover the names of the John/Jane Doe Marshals.

The Plaintiffs failed to issue written discovery to learn the identities after we granted them leave to do so in our February 2, 2016 Order.  And when they received the Rule 26(a) disclosures on February 26, 2016, Plaintiffs did not move to compel more fulsome disclosures or move to enlarge the time to serve the John/Jane Doe Marshals under Rule 4(m).  A requirement for equitable tolling doctrine is reasonable diligence.  Although Plaintiffs conclude they exercised "due diligence," there is no present pleading of their reasonable diligence in the first *Bivens* action.

The conclusory allegation of due diligence is not plausible.  We cannot simply credit conclusory allegations with no pleaded facts. There are no allegations the United States Marshals concealed the fact of injury known from October 29, 2013.

## 2. Plaintiffs fail to plead how the extension of time tolls the limitations.

Plaintiffs' companion argument is the United States Attorney's request for an extension of time to respond to the complaint in the first *Bivens* action precluded Plaintiffs from pursuing their claims requiring us to apply an equitable tolling doctrine in this second *Bivens* action. Plaintiffs offer the following syllogism: In the first *Bivens* action, the United States Attorney in Philadelphia asked for a sixty-day extension of time to respond to the official capacity claims but "waited" to move until the fifty-ninth day after service of the complaint; seeking a sixty-day extension approximately sixty-days after service on the United States Attorney amounts to 120 days, the time required by then Rule 4(m) to serve the John/Jane Doe Marshals; this timeline made it "impossible" for Plaintiffs to amend their complaint to replace John/Jane Doe Marshals with named defendants; and thus the United States Attorney precluded Plaintiffs from amending their complaint to add named defendants. This argument mistakes both the facts and the law. This conclusory rear-view mirror theory is belied by the Plaintiff's undisputed repeated failures to proceed. They could have moved for an extension for service; they did not.

Plaintiffs must name the John/Jane Does within the time for service or move to later amend adding the identities of the John/Jane Doe defendants if they can satisfy Federal Rule 15. Plaintiffs did none of these established steps. "[N]aming … a John Doe defendant in a complaint does not stop the statute of limitations from running or toll the limitations period as to that defendant."[105] Replacing, through an amended complaint, a John Doe defendant after the statute of limitations has run "with a party's real name amounts to the changing of a party or the naming of a party under Rule 15(c)" and the amended complaint "will relate back only if the three conditions specified in that rule are satisfied."[106] Plaintiffs must show: "(1) the claim or defense set forth in the amended pleading arose out of the conduct, transaction or occurrence set forth in

the original pleading; (2) within the time period provided in Rule 4(m), the party or parties to be added received notice of the institution of the suit and would not be prejudiced in maintaining a defense; and (3) the party sought to be added knew that, but for a mistake concerning his or her identity, he or she would have been made a party to the action."[107]

The first factor is not in dispute here. The claims all arise from the same incident. On the second factor, as noted earlier, then-Rule 4(m) required service of a first *Bivens* complaint within 120 days of filing. We must extend this period for an "appropriate period" "if the plaintiff shows good cause for the failure" to serve the complaint within the 120-day period.[108] But the John/Jane Doe defendants did not receive notice within the 120-day time period of then-Rule 4(m), as Plaintiffs admit. Plaintiffs did nothing to find out the identities of the John/Jane Doe defendants although we afforded them the opportunity for timely discovery before the initial pretrial conference and they could have moved to compel more fulsome mandatory disclosures. And Plaintiffs knew, as of December 28, 2015, the United States Attorney in Philadelphia did not represent the John/Jane Doe Defendants because the Department of Justice does not allow representation of unnamed defendants.

Not only did Plaintiffs do nothing to determine the identity of the John/Jane Doe Marshals and failed to show diligence in seeking this critical information, they failed to move for an enlargement of time of the 120-day service period even after receiving Director Hylton and Director Harlow's Rule 26(a) disclosures. If Plaintiffs viewed the disclosures as deficient, they could have moved to compel discovery or to enlarge the time for service. They did neither. Given the alleged role of these John/Jane Doe Marshals, Plaintiffs could have readily shown good cause to compel more fulsome disclosures and obtain an extension of time to serve them.

Two cases in our District demonstrate opposite polestars for diligence and good cause: *Anderson v. Doe I*[109] and *Lopez v. Bucks County*.[110] In *Anderson*, the plaintiff moved to amend her complaint a year after its filing to add four named police officers as defendants for John Doe defendants. Judge Rice denied the motion because the statutes of limitations on plaintiff's claims expired and the claims did not relate back to her original complaint. Like the Plaintiffs here, plaintiff Anderson sued the City of Philadelphia and John Doe officers for constitutional violations on the last day of the limitations period. Judge Rice found Ms. Anderson's amended complaint did not meet the three factors for relation back under Rule 15(c) and rejected her argument of "good cause" to extend the 120-day service period on the John Doe officers.[111] Judge Rice rejected her argument (now raised by Plaintiffs today) the City precluded her from serving the actual officers or from moving for an extension under Rule 4(m) because it "did not provide … the names of the officers present at the time of the assault until … well after the statutory time for service on these officers."[112] Judge Rice found Ms. Anderson took no action to compel the City to provide her with the names of the officers and, even after receiving the officers' names, did not timely move to amend her complaint to add the officers or seek an extension of the service period waiting another eight months to seek leave to amend.[113]

By contrast, in *Lopez* Judge Sánchez granted plaintiff's motion for leave to amend her complaint to identify John Doe medical defendants and for an extension of time for service *nunc pro tunc*. There, Ms. Lopez worked diligently to move discovery, and after the County defendant filed its answer, she arranged to schedule a Rule 26(f) conference.[114] At the Rule 26(f) conference, Ms. Lopez noted her intent to amend to name the John Doe defendants in the parties' Rule 16 report submitted to the court. Analyzing the Rule 15(c) factors for relation back as well as good cause to extend the 120-day service period on the John Doe officers, Judge Sánchez

found Ms. Lopez "notified the named Defendants and the Court from the outset of the case that she intended to amend the Complaint to name the John Does, and she diligently pursued discovery toward that end while also accommodating the County's need for additional time to respond to the Complaint and to provide Rule 26(a) disclosures. [Ms. Lopez] reasonably expected she would be able to identify the potentially liable Correctional John Does upon receipt of the County's Rule 26(a) disclosures, and when those disclosures were not forthcoming, she served formal discovery requests."[115]

Both Judge Rice and Judge Sánchez relied on our Court of Appeals' 2003 decision in *Garvin v. City of Philadelphia*,[116] a case argued and lost by Plaintiffs' current counsel. In *Garvin*, Ms. Garvin brought a civil rights case against the City and a John Doe police officer alleging, *inter alia*, the officer injured her during an arrest.[117] Ms. Garvin filed her action days before the expiration of the statute of limitations. The City answered on its behalf, but not on behalf of the John Doe officer. The City made its Rule 26(a) disclosures including police records showing the arresting officer was a woman and identified eight other officers with knowledge of the incident. Ms. Garvin believed a male officer made the arrest, not a female officer, causing her to believe the City's arrest report was inaccurate. Despite regarding the arrest report inaccurate on what the Court of Appeals called "this critical point," Plaintiff "did not attempt to depose within the time for discovery fixed by the court any of the eight officers the City listed in its initial disclosures to determine the identity of the officer who arrested her."[118]

Two days before the close of discovery, "and more than three months after the City provided her with what she asserts is an incorrect identification of the arresting officer, Garvin brought a motion to amend her complaint to substitute the names of four police officers for the

John Doe defendant and for an enlargement of time to conduct depositions of the newly named defendants."[119]  In her motion to amend, Ms. Garvin argued the City's Rule 26(a) disclosures and its documents identified the arresting police officer and asserted she made a good faith effort to determine the actual name of the John Doe officer.  In seeking leave to amend, she argued although the statute of limitations on the John Doe officers expired, her amendment should relate back to the original complaint, making it timely.[120]

The district court denied her motion to amend finding Ms. Garvin did not satisfy the three-factor test in Rule 15(c), making amendment futile under the statute of limitations.  After an unsuccessful motion for reconsideration, Ms. Garvin appealed.

Affirming the district court, our Court of Appeals found Ms. Garvin did not satisfy Rule 15(c).  Like our second *Bivens* action before us today, Ms. Garvin failed to serve the John Doe officers within 120 days under then Rule 4(m).  The Court of Appeals focused its analysis on whether the officers named in her proposed amended complaint had constructive notice of the action, the second factor in the Rule 15(c) test.[121]  The Court of Appeals concluded Ms. Garvin did not show constructive notice.

Although the notice issue is not argued here, the Court of Appeals' conclusion describing Ms. Garvin's lack of diligence is instructive: "We agree with the City that there is no reason why Garvin could not have discovered the name of the arresting officer within the time period required under Rule 15(c)(3) and Rule 4(m).  Garvin did not diligently seek to determine the identity of the officer after she received the initial disclosures from the City.  She then waited until two days before the period for fact discovery was scheduled to end before she moved to amend her complaint to include the names of four officers listed in the … initial disclosures.  In

the light of these circumstances and the other considerations we have stated herein we conclude that the district court did not abuse its discretion in denying Garvin's motion to amend."[122]

Given his representation of Ms. Garvin, Plaintiffs' counsel today is presumably aware of the diligence required to discover the names of John Doe officers before the 120-day service period of Rule 4(m) expires or to seek leave to amend to add the actual names of officers to relate back under Rule 15(c). In an apparent attempt to skirt the weight of legal authority against them, Plaintiffs argue fraudulent concealment to toll the statute of limitations. As described, it does not apply here. Plaintiffs' untimely second *Bivens* action is a result of unfortunate litigation decisions compounded by a lack of diligence, not unpleaded, misleading conduct by the United States Attorney to hide the injury. After filing their first *Bivens* action, Plaintiffs voluntarily dismissed it, seeking to recharacterize their claims as against the United States under the FTCA. Plaintiffs made this decision before Director Hylton or Acting Director Harlow responded to the first *Bivens* action, before discovery would have revealed the names of the John/Jane Doe Marshals, and before doing anything to compel the United States Attorney to identify the John/Jane Doe Marshals involved with the October 2013 incident.

There is no plausible allegation of fraudulent concealment to apply a tolling doctrine.

### C. Plaintiffs' claims are distinct from our finding questions of fact on equitable tolling in the FTCA action.

Our analysis today differs from our May 21, 2018 denial of the United States' motion to dismiss the FTCA case as untimely. In the FTCA action, the United States moved to dismiss Plaintiffs' action for failing to timely file an FTCA action within six months of the denial of their administrative claims.[123] We were not addressing the Pennsylvania statute of limitations. Plaintiffs then pleaded specific representations and arguments based on the Assistant United States Attorney's conduct towards them in negotiating the March 2016 Stipulation. Plaintiffs

specifically pleaded the March 2016 Stipulation required Plaintiffs to "promptly" file both the administrative claims and their complaint, but the Stipulation did not define "promptly" and we found it ambiguous; Plaintiffs pleaded the Stipulation (not Pennsylvania's statute of limitations) controlled and they were not required to comply with the FTCA six-month filing deadline so long as the claim and complaint were "promptly" filed; and the limitations period must be equitably tolled.[124]

We denied the United States' motion to dismiss based on this failure to file within six months of the administrative denial because we could not, without discovery, evaluate credibility issues regarding what the Plaintiffs "understood" about the terms of the Stipulation more properly addressed on summary judgment.[125] The parties entered discovery before Judge Heffley. After a full discovery period, Judge Heffley found the Plaintiffs failure to adduce evidence warranting their interpretation of the Stipulation and dismissed their FTCA case. They did not appeal.

We today address an entirely different situation. Plaintiffs offer no ambiguity or statements made by the United States Attorney inducing plaintiffs' failure to protect their rights under the Federal Rules of Civil Procedure.[126] We are not focusing on language in a stipulation negotiated by lawyers. We are comparing the Plaintiffs' conduct in late 2015 through mid-March 2016 to their rights under our February 2, 2016 Order and the Federal Rules of Civil Procedure. Parties, with our consent and a showing of good cause, can vary from these deadlines set by our Order and the Rules.

But you need to ask. You need to diligently move. Plaintiffs instead elected to pursue the FTCA case without finding out the names of the John/Jane Does Marshals which they could have readily discovered through straightforward motions to compel more fulsome disclosures or

issuing discovery requests permitted by our February 2, 2016 Order. They did not do so. Had they done so, and the United States failed to honor our orders compelling disclosures, we may have a different view today. We are instead reviewing conclusory allegations the United States' conduct, which followed the Rules of Civil Procedure, somehow equitably tolls the statute of limitations.

Discovery is not needed here; we have no credibility issues. On the face of the amended complaint and the record before us from the first *Bivens* action and the FTCA action, Plaintiffs fail to plausibly allege the fraudulent concealment theory of equitable tolling including the requisite diligence.[127]

### III.  Conclusion

The Marshals move to dismiss this third case filed by Plaintiffs regarding the October 29, 2013 incident for multiple reasons including Pennsylvania's statute of limitations bars the claims.[128] Plaintiffs argue their admittedly untimely complaint should be allowed to proceed as equitably tolled based on fraudulent concealment.

Plaintiffs' claims are barred by the statute of limitations. On the face of the amended complaint as well as the history of Plaintiffs' *Bivens* actions and FTCA action, the Plaintiffs' tolling doctrine theory based on fraudulent concealment is not plausible. We dismiss Plaintiffs' amended complaint with prejudice as there are no facts which could be pleaded to overcome the Plaintiffs' admissions and the public docket.

---

[1] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). In *Bivens*, the Supreme Court recognized a private cause of action to recover damages against federal actors for constitutional violations. This is referred to as a "*Bivens* claim."

[2] ECF Doc. No. 19 at ¶ 74.

[3] *Id.* at ¶¶ 75-76.

[4] *Id.* at ¶ 75. During the raid, the Marshals carried assault rifles and/or shotguns, some equipped with laser sights, and aimed their weapons at Plaintiffs. *Id.* at ¶ 76. The Marshals did not identify themselves. *Id.* at ¶ 77.

[5] *Id.* ¶¶ 83-84.

[6] *Id.*

[7] *Id.* at ¶ 78.

[8] *Id.* at ¶ 79.

[9] *Id.* at ¶ 80.

[10] *Id.* at ¶ 81.

[11] *Id.* at ¶ 82.

[12] Stacia Hylton served as Director of the United States Marshals Service from December 31, 2010 to July 26, 2015 when David Harlow became the Acting Director and Deputy Director. *History-List of USMS Directors and Predecessors*, U.S. Marshals Service, https:// www.usmarshals.gov/history/directors.htm. For purposes of this memorandum, we refer to Ms. Hylton as Director Hylton and to Mr. Harlow as Acting Director Harlow.

[13] *Taylor v. Hylton,* No. 15-5894, ECF Doc. No. 1 ("first *Bivens* action").

[14] *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978).

[15] The United States Attorney in Philadelphia moved for an extension of time for Director Hylton, Acting Director Harlow, and the John/Jane Doe Marshals, clarifying "[t]his motion is being filed on behalf of the federal defendants. The Assistant United States Attorney has been given limited authority to represent the individuals only for the purpose of filing this motion. No defenses, including but not limited to, lack of proper service, lack of subject matter jurisdiction and lack of personal jurisdiction are being waived by the filing of this motion." First *Bivens* action, ECF Doc. No. 3, n.1.

[16] First *Bivens* action at ECF Doc. No. 3.

[17] *Id.* at ECF Doc. No. 4.

[18] *Id.* at ECF Doc. No. 5. Congress later amended Rule 4(m) to reduce the time of service from 120 days to 90 days.

[19] *Id.* at ECF Doc. No. 6, 7. On February 25, 2016, Assistant United States Attorney Landon Y. Jones, III entered his appearance for Director Hylton and Acting Director Harlow. *Id.* at ECF Doc. No. 8.

[20] *Taylor v. Tumolo*, No. 19-4533, ECF Doc. No. 19 at ¶ 45, Exhibit "C."

[21] First *Bivens* action at ECF Doc. No. 9.

[22] Section 2675(a) of the FTCA provides: "An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, ***unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing*** and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section." 28 U.S.C. § 2675(a) (emphasis added).

[23] First *Bivens* action at ECF Doc. No. 9. The agency here is the United States Marshals Service.

[24] *Id.*

[25] *Taylor v. United States*, No. 18-706, ECF Doc. Nos. 3-3; 3-4 ("FTCA action").

[26] The FTCA provides "[t]he failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section." 28 U.S.C. § 2675(a).

[27] FTCA action at ECF Doc. No. 3-5.

[28] *Id.* at ECF Doc. No. 10.

[29] *Id.* at ¶ 11.

[30] *Id.* at ECF Doc. No. 11. We also could have allowed the amended complaint with the substituted defendant and stayed the progress pending the administrative review, but the parties stipulated the Plaintiffs would dismiss the case without prejudice. We approved the parties' March 2016 Stipulation.

[31] *Id.* at ECF Doc. No. 1.

[32] *Id.* at ECF Doc. No. 3. The United States argued as to Mr. Butler only he failed to timely present his claim to the agency.

[33] *U.S. v. Kwai Fun Wong*, 575 U.S. 402, 405 (2015) (quoting 28 U.S.C. § 2401).

[34] The United States concedes Plaintiffs filed their FTCA claim on February 1, 2018 in No. 15-5894 (which we struck), and which Plaintiffs then filed on February 20, 2018 at No. 18-706.

[35] FTCA action at ECF Doc. No. 3.

[36] *Id.* at ECF Doc. No. 6.

[37] *Id.* at ECF Doc. No. 6, ¶ 17.

[38] *Id.* at ¶ 18.

[39] *Id.* at ECF Doc. No. 8.

[40] *Id.* at ECF Doc. No. 9.

[41] *Id.* at ECF Doc. No. 10.

[42] *Id.* at ECF Doc. Nos. 12, 14.

[43] *Id.* at ECF Doc. Nos. 15, 16.

[44] *Id.* at ECF Doc. No. 19.

[45] *Id.* at ECF Doc. No. 20.

[46] *Id.* at ECF Doc. Nos. 21, 22.

[47] *Id.* at ECF Doc. No. 23. Federal Rule of Civil Procedure 56(d) provides: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."

[48] *Id.* at ECF Doc. No. 24.

[49] *Id.* at 6 (using the pagination assigned by the CM/ECF docketing system).

[50] *Id.* at 7, ¶ 5.

[51] *Id.* at 9, ¶¶ 11-13.

[52] *Id.* at 10, ¶¶ 17-18.

[53] *Id.* at ECF Doc. No. 26.

[54] *Id.* at 11.

[55] *Id.* at ECF Doc. No. 28.

[56] *Id.* at ECF Doc. No. 29.

[57] One of the defendants, Pennsylvania State Trooper John Cargan, now retired, is represented by the Pennsylvania Attorney General's office. The Pennsylvania Attorney General explains Trooper Cargan is sued for actions taken as a Special Deputy United States Marshal but, because his position is not clear from the original complaint identifying him only as a Pennsylvania State Trooper, Trooper Cargan is represented by the Pennsylvania Office of Attorney General. *See* Second *Bivens* action, ECF Doc. No. 25 at 1, n.1.

[58] Second *Bivens* action at ECF Doc. No. 19.

[59] *Id.* at ECF Doc. Nos. 15, 16. Plaintiffs filed the amended Complaint beyond the twenty-one days permitted by the Federal Rules. We ordered the parties show cause as to how we could proceed with an untimely filed amended Complaint. ECF Doc. No. 20. The United States Attorney waived an objection and consented to the untimely filing mooting the Defendants' motions to dismiss. ECF Doc. No. 21.

[60] *Id.*, ECF Doc. No. 19 at ¶ 51.

[61] *Id.* at ¶¶ 39-40, Exhibit "B."

[62] *Id.* at ¶¶ 41-42.

[63] *Id.*

[64] *Id.* at ¶ 44.

[65] *Id.* at ¶ 51.

[66] *Id.* at ¶ 52.

[67] *Id.* at ¶¶ 55-59. Plaintiffs allege the United States did not make their initial Rule 26(a) disclosures until *March* 30, 2019. We assume this is a typographical error, as the Rule 26(a) disclosures are dated *May* 30, 2019. *See* ECF Doc. No. 19 at Exhibit "E."

[68] When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must tak[e] note of the elements [the] plaintiff must plead to state a claim;" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corporation*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[69] Second *Bivens* action at ECF Doc. No. 24. Special Deputy United States Marshal Cargan also moves to dismiss Plaintiffs' claims against him under Rule 12(b)(6) for the same reasons asserted by the other defendant Marshals and incorporates their brief in support of his motion to dismiss the amended complaint in the second *Bivens* action. *See* ECF Doc. No. 25.

[70] Plaintiffs filed a supplemental Notice highlighting the Supreme Court's grant of certiorari for the 2021 term in a case involving the FTCA judgment bar. *Id.* at ECF Doc. No. 29. We need not address these arguments as there is no basis to toll the statute of limitations on grounds asserted by the Plaintiffs.

[71] *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Robinson v. Johnson*, 313 F.3d 128, 134–35 (3d Cir. 2002)). *See also DePack v. Gilroy*, 764 F. App'x 249, 251 (3d Cir. 2019) ("Although the statute of limitations is an affirmative defense … if it is obvious from the face of the complaint that a claim is barred by the applicable statute of limitations, a court may dismiss the claim *sua sponte*").

[72] *DePack*, 764 F. App'x at 251 (citing *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010)).

[73] *Kornafel v. United States Postal Serv.*, 784 F. App'x 842, 843 (3d Cir. 2019). *See also Omar v. Blackman*, 590 F. App'x 162, 165 (3d Cir. 2014) (*Bivens* claims are subject to Pennsylvania's two-year statute of limitations) (citing 42 Pa. Cons. Stat. Ann. § 5524).

[74] *Omar*, 590 F. App'x at 165 (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)).

[75] *Id.*

[76] *Sameric Corp. of Delaware, Inc. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998) (defining accrual of claim in an action under 42 U.S.C. § 1983).

[77] Second *Bivens* action, ECF Doc. No. 19 at ¶¶ 57-58.

[78] *Kach v. Hose*, 589 F.3d 626, 639 (3d Cir. 2009) (citing *Hardin v. Straub*, 490 U.S. 536, 539 (1989); *Island Insteel Sys. v. Waters*, 296 F.3d 200, 210 n. 4 (3d Cir. 2002)).

[79] *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983).

[80] *Id.* at 471 (citations omitted).

[81] *Commc'ns Network Int'l Ltd. v. Mullineaux,* 187 A.3d 951, 961 (Pa. Super. 2018) (quoting *Wachovia Bank, N.A. v. Ferretti*, 935 A.2d 565, 572–73 (Pa. Super. 2007) (emphasis in original).

[82] Second *Bivens* action at ECF Doc. No. 27. Although the amended complaint pleads the discovery rule, equitable estoppel, or fraudulent concealment applies to toll the statute of limitations on the second *Bivens* action, Plaintiffs elected to "limit their discussions to Fraudulent Concealment" in response to the motion to dismiss. *Id.* at 12. Plaintiffs' failure to respond to the Marshals' argument regarding the discovery rule and equitable estoppel constitutes an abandonment of those tolling theories. *See Levy-Tatum v. Navient Solutions, Inc.,* 183 F.Supp.3d 701, 712 (E.D. Pa. 2016) (plaintiff's response in opposition to motion to dismiss addressing some, but not all, of defendant's arguments is an abandonment of the claims and are waived) (collecting cases); *Markert v. PNC Fin. Services Grp.*, Inc., 828 F.Supp.2d 765, 773 (E.D. Pa. 2011) ("Where an issue of fact or law is raised in an opening brief, but it is uncontested in the opposition brief, the issue is considered waived or abandoned by the non-movant in regard to the uncontested issue"). As the Plaintiffs waived the other grounds to toll the statute of limitations, we address only fraudulent concealment.

[83] *Fine v. Checchio*, 870 A.2d 850, 860 (Pa. 2005).

[84] *Id.* (citing *Deemer v. Weaver*, 187 A. 215 (Pa. 1936)).

[85] *Arndt v. Johnson & Johnson,* 67 F.Supp.3d 673, 678 (E.D. Pa. 2014).

[86] *Fine*, 870 A.2d at 860.

[87] *Id.* (citing *Molineux v. Reed*, 532 A.2d 792, 794 (Pa. 1987)).

[88] *Id.* (citing *Nesbitt v. Erie Coach Co.*, 204 A.2d 473, 476 (Pa. 1964)).

[89] *Id.* at 861 (citing *Pocono Int'l Raceway, Inc.*, 468 A.2d at 471.

[90] *Id.*

[91] *Id.* (emphasis added).

[92] *Id.* at 861-62.

[93] Second *Bivens* action, ECF Doc. No. 19 at 47 (using the pagination assigned by the CM/ECF docketing system).

[94] First *Bivens* action at ECF Doc. No. 2.

[95] *Id.* at ECF Doc. No. 3.

[96] *Id.* at nn. 1, 2.

[97] The United States Attorney did not tell us the Plaintiffs' position as to an extension. We now require all motions for extension address opposing counsel's position. We expect the United States and all counsel will do so in future filings.

[98] First *Bivens* action at ECF Doc. No. 4.

[99] *Id.* at ECF Doc. No. 5.

[100] *Id.* at ECF Doc. No. 6.

[101] *Id.* at ECF Doc. No. 7.

[102] Fed.R.Civ.P. 4(m).

[103] First *Bivens* action at ECF Doc. No. 7 (emphasis in original).

[104] *Fine,* 870 A.2d at 860 (citing *Deemer v. Weaver*, 187 A. 215 (Pa. 1936)).

[105] *Garvin v. City of Philadelphia*, 354 F.3d 215, 220 (3d Cir. 2003) (citing *Talbert v. Kelly*, 799 F.2d 62, 66 n. 1 (3d Cir. 1986)).

[106] *Id.* (citing *Varlack v. SWC Caribbean, Inc.*, 550 F.2d 171, 174 (3d Cir. 1977)).

[107] *Id.* at 222.

[108] Fed.R.Civ.P. 4(m).

[109] No. 11-6267, 2012 WL 6645536 (E.D. Pa. Dec. 20, 2012).

[110] No. 15-5059, 2016 WL 3612056 (E.D. Pa. July 5, 2016).

[111] *Anderson*, 2012 WL 6645536 at * 4.

[112] *Id.*

[113] *Id.*

[114] *Lopez*, 2016 WL 3612056 at *1.

[115] *Id.* at *4.

[116] 354 F.3d 215 (3d Cir. 2003).

[117] *Id.* at 217-18.

[118] *Id.* at 218.

[119] *Id.*

[120] *Id.* at 218-19.

[121] *Id.* at 222-27.

[122] *Id.* at 227-28.

[123] FTCA action at ECF Doc. No. 8.

[124] *Id.* at ECF Doc. No. 9.

[125] *Id.* at ECF Doc. No. 10.

[126] The same attorneys from the Philadelphia United States Attorney's office represented the named parties in the first *Bivens* action, the FTCA action, and this second *Bivens* action. We need not address the Defendants' argument regarding the identity of the defendants in the first and second *Bivens* actions. Defendants argue fraudulent concealment does not toll the statute of limitations because Plaintiffs "are indiscriminately using the term 'Defendants' to obfuscate the nature of their allegation. Hylton and Harlow, the only defendants that appeared in the *Taylor v. Hylton* action, are not defendants here. The sixteen defendants who are named in the amended complaint did not appear in and were not parties to the *Taylor v. Hylton* action. Nor was Hylton, Harlow, or any of the sixteen current defendants a party to the *Taylor v. United States* action under the FTCA. Nonetheless, plaintiffs indiscriminately refer to 'Defendants' or 'Defendant' as litigants in all three actions. The 'defendants' in this suit did not appear in and were not parties to the original *Bivens* action." Second *Bivens* action, ECF Doc. No. 24 at 22. The Marshals argue there can be no "plausible factual allegation that they did anything at all in the original *Bivens* action, let alone 'actively conceal' their identities." *Id.* at 22-23. This argument is misplaced. There is no dispute Plaintiffs sued twenty John/Jane Doe Marshals in the first *Bivens* action along with Director Hylton and Acting Director Harlow. There is also no dispute the United States disclosed the names of the John/Jane Doe Marshals in its Rule 26(a) disclosures even where Director Hylton, Acting Director Harlow, and the John/Jane Doe Marshals were not defendants. The Marshals' argument now raises questions of fact regarding the United States Attorney's representation and possible issues of shared representation and notice. We need not explore these issues. Plaintiffs failed to plausibly plead, and the record from the first *Bivens* action and FTCA action confirms, fraudulent concealment does not apply to equitably toll the statute of limitations.

[127] *See DePack v. Gilroy*, 764 F. App'x 249, 252 (3d Cir. 2019).

[128] ECF Doc. No. 24.